MARTIN HAGENSICK, Receiver of First National Bank of St. Ansgar, Appellant, v. O. H. KOCH, Executor, et al., Appellees.

No. 42982.

DECEMBER 17, 1935.

W. G. Henke and R. W. Zastrow, for appellant.

H. R. Duncan, and Campbell & Campbell, for appellees.

DONEGAN, J.—The original parties to this action were the First National Bank of St. Ansgar, Iowa, plaintiff, and Sophia Toeter, defendant. After the case had been tried in the district court but before decision or decree therein, the plaintiff went into receivership, and Martin Hagensick, receiver of the First National Bank of St. Ansgar, Iowa, was substituted as party plaintiff. Likewise, after the trial but before decision or decree therein, the defendant Sophia Toeter died, and the executor of her estate and her heirs were substituted as parties defendant. As the rights and liabilities of the substituted plaintiff and defendants, so far as the issues involved in this case are concerned, are controlled by the rights and liabilities of the original parties to the action, we shall refer only to the original plaintiff and defendant in our discussion.

During all the times involved in this action, Sophia Toeter was a widow. Among other of her children was George or G. W. Toeter, who died in 1930. The beginning of the transactions involved in this case goes back to the 27th day of January, 1916. At that time, Sophia Toeter was living on a farm in

Mitchell county. Her son George Toeter was at one time a farmer, but later moved to the town of St. Ansgar in Mitchell county, Iowa, where he was engaged in the real estate and insurance business until the time of his death. The record does not clearly indicate whether he was still a farmer or had already moved to St. Ansgar on the 27th day of January, 1916. It appears that about that time George Toeter went to the farm where his mother resided and asked her to sign a note for him, and, pursuant to this request, Sophia Toeter signed a note payable to the First National Bank of St. Ansgar, Iowa, in the sum of $2,500. Evidence introduced by plaintiff tends to show that this note was renewed in 1917, 1919, 1921, and 1922, and that all interest was paid up to the time of each renewal. There is evidence of other renewals on November 11, 1922, on March 23, 1923, and on May 21, 1924; this last renewal including accrued interest and being in the principal sum of $2,900. None of the notes except the last was introduced in evidence. Sophia Toeter denied that she ever signed any of these notes subsequent to the second renewal, which was executed March 1, 1919, or that she knew anything about such renewals. It appears that for several years before the time this suit was instituted Sophia Toeter had no separate home of her own, but that she visited with and made her home with her different children, and that during this time all her papers were kept for her by her son George Toeter in the safe which he had in his office in St. Ansgar. Among such papers was a mortgage on 80 acres of land in Mitchell county, and the notes secured thereby, which had been executed to Sophia Toeter by one Peter Larsen and wife, as security for $11,000 loaned to the mortgagee as a part of the purchase price of said land. On June 17, 1925, George Toeter executed and delivered to the bank an instrument entitled, ''Pledge of Security,'' reading as follows:

''This is to certify that the accompanying notes and real estate mortgage of $11,000. given by Peter A. Larsen to Mrs. Sophia Toeter—recorded in the office of County Recorder of Mitchell County, Iowa, on February 3, 1921 in book 42/p 451— is pledged to the First National Bank, of Saint Ansgar, Iowa, as security for the payment of the notes listed below, and such other indebtedness, evidenced by note or otherwise, as may be due said bank by the undersigned till said notes are paid.

"Note of Sophia Toeter $2900.00 dated 5/21/24
"Note of G. W. Toeter 1000.00 '' '' ''
"Note of G. W. Toeter 1138.00 '' 8/23/24
" (Int. on above note paid to 5/21/26)

 "Mrs. Sophia Toeter
 "by Geo. W. Toeter, Agt."

This pledge was later surrendered to George Toeter and an assignment of the Larsen mortgage received from him in place thereof. This assignment is dated and acknowledged March 7, 1928. The name "Mrs. Sophia Toeter" appears as the assignor, and at the top of this assignment is the statement: "This assignment is made for collateral purpose." The evidence in behalf of the bank is to the effect that, at the time the pledge of security was given, it was accompanied by the Larsen mortgage and notes as well as the notes of Sophia Toeter and G. W. Toeter described therein.

Some time prior to the 3d day of April, 1930, negotiations were entered into by Peter Larsen, the mortgagee, and George Toeter, acting for Sophia Toeter, in regard to the transfer of the mortgaged land to Mrs. Toeter and the release of the mortgage and notes secured thereby, and an agreement was reached under which Larsen and wife deeded the 80 acres of land to Mrs. Toeter and, in turn, Mrs. Toeter paid Larsen $550 and returned the mortgage and notes to him. The evidence in behalf of the bank is that, in order to obtain the Larsen mortgage and notes from the bank, George Toeter agreed with the bank that Mrs. Toeter would execute a mortgage on the land directly to the bank to secure the payment of the indebtedness represented by the notes for which the Larsen mortgage had been assigned to it as collateral. It is claimed by the bank that, pursuant to this agreement, Mrs. Toeter on April 3, 1930, executed to the bank her mortgage on the 80 acres (Exhibit C in the record), which recites that it is given as security for a note of Sophia Toeter for $4,750 and a note of George W. Toeter for $2,000, both dated November 18, 1929, and due November 18, 1932. The first, or $4,750, note, is signed "Mrs. Sophia Toeter By G. W. Toeter Atty", and the second, or $2,000, note, is signed "G. W. Toeter." The evidence on behalf of the bank is that the total of these two notes is the same as the total then due the bank on the Sophia Toeter note for $2,900

and the two notes of George Toeter for $1,000 and $1,138, respectively, and that $4,750 was put in the note signed "Mrs. Sophia Toeter By G. W. Toeter Atty", and only $2,000 in the note signed "G. W. Toeter", because if a greater amount was put in the latter note George Toeter would have an excessive loan. Sophia Toeter denies that she signed or acknowledged the execution of the mortgage, Exhibit C, or that she had any knowledge of the notes referred to therein, at the time this transaction took place. This mortgage was recorded on the 14th day of April, 1930, and George Toeter died some time thereafter and before September, 1930; the exact date of his death, so far as we can find, not appearing in the record. Following the death of George Toeter and in September, 1930, Mrs. Toeter had a conversation with Mr. Lund of the First National Bank of St. Ansgar, and, according to her testimony, she then, for the first time, learned of the existence of the mortgage, Exhibit C, and of the notes referred to therein. So far as the record shows, she did not, at that time, either consent or refuse to pay the indebtedness evidenced by the notes and secured by the mortgage, and thereafter it does not appear that she did anything in regard to the matter.

In November, 1932, the First National Bank of St. Ansgar, Iowa, commenced this action for the indebtedness claimed to be due on the $4,750 and the $2,000 notes, and for the foreclosure of the mortgage, Exhibit C. The petition recited at some length the history of the indebtedness evidenced by these notes, the execution of the pledge given to the bank as security for such indebtedness, the assignment of the Larsen mortgage, the delivery of the Larsen mortgage and notes to George Toeter, agent of Sophia Toeter, for the purpose of enabling Sophia Toeter to release them in exchange for a deed to the land, on condition that a new mortgage on the land be given by Sophia Toeter to the bank, and alleged that the mortgage and the notes secured thereby were made, executed, and delivered to the bank pursuant to this agreement. The defendant, in her answer, denied generally the allegations of the petition; denied that she had ever authorized G. W. Toeter to renew any obligation for her or to create any new obligation for her, or to mortgage, pledge, or assign any of her property either real or personal; alleged that all notes and mortgages set forth in plaintiff's petition purporting to be signed, renewed, or pledged by her or through

her authorized agent, were false and invalid; specifically denied the execution of the mortgage, Exhibit C, that she ever signed said mortgage or the note for $2,900, or the assignment of the Larsen mortgage to the bank, or that she ever authorized any other person to do so; and alleged that the said mortgage and the notes for $4,750 and $2,000, therein referred to, are spurious and invalid. For reply, the plaintiff bank alleged that the things done by George W. Toeter were done with the knowledge and consent of Sophia Toeter; that she had intrusted to said George W. Toeter the power to do all acts connected with her business; that, with knowledge of the things done by him, she had raised no objection and had not given the bank or other persons dealing with her any reason to believe that George Toeter did not have general authority to sign papers for her; and that she had accepted the benefit of the things done by George Toeter and thereby ratified the same. The case was tried in equity, and on June 16, 1934, a decree was entered in favor of the defendant, and the plaintiff's petition was dismissed at plaintiff's costs. From this decree the plaintiff appeals.

It seems necessary, to a decision of this case, that we determine, in the first place, whether or not Sophia Toeter did sign and acknowledge the mortgage, Exhibit C, which it is herein sought to foreclose. Attached to this mortgage is a certificate of acknowledgment signed by Martin Moe, notary public in and for Mitchell county, Iowa, which certifies that on the 3d day of April, 1930, Sophia Toeter personally appeared before him and acknowledged the execution of the mortgage to be her voluntary act and deed. Martin Moe was a witness in the case, and his testimony shows that Mrs. Toeter did not personally appear before him, that he did not see her sign her name to the mortgage, and that she did not personally acknowledge its execution before him. It does not show that he ever talked to Mrs. Toeter in regard to the acknowledgment, or that she or any other person ever told him that the signature on the mortgage was that of Sophia Toeter or that she intended to acknowledge the execution of the instrument to be certified by him. There is no evidence of any other person as to what occurred at the time this certificate of acknowledgment was executed. The only other person claimed by Moe to have been present at the time the certificate of acknowledgment was made out by him was

George Toeter, and George Toeter was dead at the time of the trial. Moe did testify that he was familiar with Mrs. Toeter's signature and that the signature on the mortgage was the signature of Sophia Toeter. This seems to be the only part of his testimony in which the appellant is concerned, and stress is put upon the claim that he was a disinterested witness. In view of the fact that he had certified to an acknowledgment by a person who had not appeared before him and with whom he does not claim to have had any communication in regard to the acknowledgment, we are constrained to feel that he may have had considerable interest in trying to find some explanation for his conduct, and we cannot give much weight to his testimony as to the genuineness of the signature.

 Sophia Toeter, in her answer, denied under oath the genuineness of this signature. The burden was therefore upon the plaintiff bank to establish its genuineness. None of the witnesses claims to have seen her sign the mortgage, or to have heard her make any admission that it was signed by her. The only evidence as to the genuineness of the signature consisted of opinions of witnesses. It is true there is an attempt on the part of the attorneys for the appellant to claim that Mrs. Toeter in her testimony admitted this signature. With this, however, we do not agree. At the time of the trial Mrs. Toeter was 75 years of age, and the evidence is uncontradicted that her eyesight was defective. She submitted to a direct examination covering practically the entire history of the transactions involved in this case, and to a long and strenuous cross-examination. It is true that in one or two instances she made answers which might, if taken by themselves, be construed as an admission that the signature on the mortgage was hers. But, in the course of her examination, she repeatedly denied this signature and denied that she ever knew anything about the instrument in question until after the death of George Toeter, and we are satisfied that a fair consideration of her evidence does not support the contention that she at any time admitted the signature upon the mortgage to be genuine.

Aside from the witness Moe, to whom reference has already been made, the only evidence as to the genuineness of the signature offered by the plaintiff bank was that of a witness Russell, a receiver of a bank with twenty years' experience in examining signatures, and of Albert Halverson, who was con-

nected with another bank at St. Ansgar and claimed to be familiar with the signature of Sophia Toeter. Each of these witnesses testified that in his opinion the signature on the mortgage was genuine. On the other hand, a witness Lubiens testified that he had operated a bank at St. Ansgar for thirty years prior to 1921, that he was familiar with the signature -of the defendant Sophia Toeter, and that the signature on the mortgage, Exhibit C, in his opinion, was not her genuine signature. The record does not show any detailed examination of any of these witnesses in regard to characteristics of this signature upon which they based their opinions. The original exhibits in this case have been certified to this court and an examination of the signature on Exhibit C, and a comparison of this signature with other signatures submitted and acknowledged to be genuine, convinces us that the signature appearing upon the mortgage, Exhibit C, is not the genuine signature of Sophia Toeter. We reach this conclusion not only from a consideration of the testimony of the witnesses, but from the facts and circumstances shown in evidence in connection with the dealings of all the parties and from the intrinsic evidence of the signature itself when compared with other admittedly genuine signatures. We do not take into consideration any of the matters appearing in the abstract as to the opinions of experts with whom the trial judge talked subsequent to the submission of the case.

■■■ It is the contention of the appellant, however, that the evidence shows that George Toeter had for several years looked after the affairs of Sophia Toeter; that, in connection with her affairs, he had signed checks and notes for her with her knowledge and consent; and that, even if the mortgage and some of the other instruments involved in this case were signed by him, such action on his part was within the general scope of his apparent authority, and is binding upon Sophia Toeter. We do not think this contention is supported by the evidence. It is true that George Toeter had all of the papers of Sophia Toeter in his possession with her consent. It is true that, with her consent, he collected the income on the Larsen mortgage, maintained an account in her name in the appellant bank, and drew checks upon this account in payment of bills owed by her. It is also true that, in connection with the settlement with Larsen, he drew a note for $550 to obtain the money with which to make

a cash payment to Larsen, and that this note was afterwards paid by Sophia Toeter. The evidence shows, however, that he had specific authority to make this settlement and to transact matters connected therewith, and, while the note signed by him was later paid by Sophia Toeter, this does not show that he had authority to execute it. Sophia Toeter had agreed to pay Larsen $550; this money was obtained from the other bank in St. Ansgar; and there was no good reason why it should not be paid back, even if a note for the amount had been given to that bank by George Toeter without authority. There is no evidence that the signature of Sophia Toeter was ever signed to this note or any other note with her authority, and there is no evidence to show that George Toeter ever signed her name with her consent for any other purpose except to draw checks upon the account in the appellant bank in payment of her bills and expenses. The evidence also shows that any banking business which Sophia Toeter did personally was done with another bank at St. Ansgar, and there is nothing to show that the account at the appellant bank was used for any other purpose than for taking care of the receipts and disbursements in connection with the collection of the income of Sophia Toeter and the payment of her debts, which business George Toeter was authorized to conduct. We find nothing in the evidence that supports the contention of the appellant that the signing of the name of Sophia Toeter by George Toeter, either to the mortgage or to any other instrument involved in this case, was within the scope of his apparent authority.

██ Appellant also contends that, even if Sophia Toeter did not know of the existence of the mortgage, Exhibit C, and of other instruments which she denied were signed by her, she did execute the assignment of the Larsen mortgage, which was substituted as collateral security in place of the pledge of said mortgage and the notes enumerated in the pledge, at the time the settlement was made with Larsen. The signature to this assignment was also denied under oath by Sophia Toeter in her answer, and we are not satisfied that the appellant bank has sustained the burden thus cast upon it of sustaining the genuineness of such signature. An examination of the signature itself and a comparison of it with other acknowledged genuine signatures inclines us to believe that it was not signed by Sophia Toeter. True, the notary public who took the acknowledgment

swore that Sophia Toeter signed this instrument in his presence, that he saw her sign it, and that she acknowledged the execution of the assignment before him. This witness, however, was an employee of the appellant bank at the time the acknowledgment was certified to by him, and he does not recall whether any other person was present, does not recall anything that was said, and was unable to recall anything connected with the acknowledgment, except that Sophia Toeter was present, that he saw her sign the instrument, and that she acknowledged the execution of the instrument to be her voluntary act and deed. In view of the doubts raised by a comparison of the signature itself with other genuine signatures, and, in view of the peculiar methods pursued by the bank in the transaction of business with George Toeter for his mother, without consulting her as to many of the things that were done, as shown by the whole record, we find the evidence insufficient to support the contention that the assignment of the Larsen mortgage was signed by Sophia Toeter. It is undisputed in the evidence that the original $2,500 note was signed and given to the bank, not for any debt of Sophia Toeter, but for money furnished to George Toeter. She denied signing any note to the bank subsequent to the renewal note given by her in 1919. No notes bearing her signature subsequent to that time, with the exception of the note for $2,900 claimed to have been executed May 21, 1924, were submitted in evidence, and there is nothing to show that any of these notes were signed by her. It is undisputed in evidence that all of the indebtedness involved in this case, other than that growing out of the original $2,500 for which Sophia Toeter gave her note, was the indebtedness of George Toeter, and, even if the $2,900 note was signed by her, or even if it represents the accumulations upon the original $2,500 for which she became liable, the evidence fails to show that she had any knowledge of the pledge of the Larsen mortgage as security for this $2,900 note, and the assignment itself states that it "is made for collateral purpose," and does not specify what indebtedness was to be secured. We think the evidence is insufficient to establish any lien upon the property of Sophia Toeter.

 It is further contended that after the death of George Toeter, when Sophia Toeter visited the appellant bank and was told of the existence of the mortgage and of the amount of indebtedness secured by it, her conduct on that occasion and

thereafter amounted to a ratification of the mortgage and of all that had been done by George Toeter, acting as her agent, and also that, by failing to deny her liability at that time and by failing to take any action thereafter, until after the commencement of this suit, to show her intention to deny liability on the mortgage and notes secured thereby, Sophia Toeter led the appellant bank to believe that she would pay the indebtedness evidenced by the notes and secured by the mortgage, and is estopped from now denying the validity of said mortgage and the notes secured by it. The evidence utterly fails to show that, on the occasion of this visit to the bank, Sophia Toeter said or did anything indicating that she would pay the indebtedness evidenced by the note and referred to in the mortgage sought to be enforced in this case. The most that can be said for such evidence is that Sophia Toeter did not at that time say that she would not pay the debt. In our opinion, this evidence is entirely insufficient, either to show a ratification of the mortgage and notes or to create an estoppel, and there is nothing in the evidence to indicate that the bank was misled by anything said or done by Sophia Toeter or that it refrained from taking any action because of anything that was said or done by her.

The whole record in this case leads to the conclusion that George Toeter, without authority therefor, was making use of the papers intrusted to him for safe-keeping by his mother, for the purpose of securing money from the appellant bank for himself, and that the conduct of the bank was not such as to relieve it from criticism. It clearly appears that the conduct of the bank in its transactions with George Toeter in reference to Sophia Toeter's property failed to comply with the strict business methods to which banks should conform, and that, as a result of George Toeter's betrayal of the confidence reposed in him by his mother, it was benefited by obtaining security for the personal indebtedness which George Toeter owed to it. Whether such conduct on the part of the bank was deliberate and for the purpose of benefiting itself, we do not need to decide and do not suggest, but that its conduct is capable of such an inference cannot well be denied. So far as the record shows, however, the original indebtedness of $2,500 for which Sophia Toeter became liable by giving her note to the bank, and whatever accumulations there may be thereon, has not been paid, and the decision in this case is not intended as in any way ad-

judicating any rights which the bank may have growing out of such indebtedness.

We decide only that the notes sued on in this action were not signed by Sophia Toeter and do not evidence indebtedness owing by her; that the mortgage sought to be foreclosed was not signed by Sophia Toeter and imposed no lien on the land described therein; that the evidence before the court on the trial of this case does not establish either the present existence of or the amount of any indebtedness that may be owing to the appellant bank by Sophia Toeter; and that such evidence does not establish any equitable lien on any of the property of Sophia Toeter growing out of either the pledge of the Larsen mortgage or the assignment of the Larsen mortgage.

We reach the conclusion, therefore, that the decree of the trial court in dismissing the plaintiff's petition at plaintiff's costs should be sustained, but that such dismissal should be without prejudice to any rights that the plaintiff may have to enforce the payment of any indebtedness that Sophia Toeter may have owed it, against the substituted defendants, or any of them, or against any other person or persons who may be liable therefor, if any such there be.

As thus modified, the case is therefore affirmed.—Modified and affirmed.

KINTZINGER, C. J., and all Justices concur.